UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NICOLE L. LAPIERRE-POFF,

        Plaintiff,

        v.                       Case No. 20-C-819

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER AFFIRMING DECISION OF COMMISSIONER

    Plaintiff Nicole LaPierre-Poff filed this action for judicial review of a decision by the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff contends that the decision of the Administrative Law Judge (ALJ) is flawed and requires remand because the ALJ failed to elicit a reasoned and principled explanation of the Vocational Expert's (VE) job incidence numbers before relying on the VE's testimony to support the denial at step five. For the reasons that follow, the Commissioner's decision will be affirmed.

## BACKGROUND

    Plaintiff filed applications for disability insurance benefits and supplemental security income on August 3, 2017, alleging disability beginning December 30, 2016, at which time she would have been 44 years old. She listed rheumatoid arthritis; depression; anxiety; nerve pain in feet and legs; immobile from pain in joints in arms, feet, and hips; uncontrollable bowel movements; and short-term memory loss as the conditions that limited her ability to work. R. 77–78. She also indicated that she cannot walk barefoot because it feels like she is walking on broken

glass and that she cannot move her right arm without excruciating pain. R. 78. After her applications were denied initially and on reconsideration, Plaintiff requested a hearing before an ALJ. ALJ Edward Studzinski conducted a hearing on March 15, 2019, at which Plaintiff, who was represented by counsel, and a VE testified. R. 40–76.

At the time of the hearing, Plaintiff was 46 years old and lived in an apartment with her husband. R. 53. She testified that she finished high school, completed a five-year apprenticeship program, and then became a pipe fabricator. R. 46–47. Plaintiff stopped working as a pipe fabricator due to her rheumatoid arthritis. *Id.* She reported that her rheumatoid arthritis also prevents her from cooking a full meal and doing simple household chores. R. 48, 53. She stated that she could stand for thirty minutes, switch between standing and walking for two hours in an eight-hour workday, sit for about 45 minutes at a time, and use her hands for two hours in an eight-hour workday. R. 49–50, 52. Plaintiff testified that she alleviates her pain by taking pain medication and using Lidocaine patches. R. 54. Plaintiff also reported that she was born without sight in her right eye and, although the condition did not prevent her from working as a pipe fabricator, she is cautious while driving. R. 48.

The ALJ also heard testimony from VE Aimee Mowery. According to the VE, Plaintiff would be unable to perform her past work as a pipe fabricator. R. 69. The VE testified that a hypothetical person with Plaintiff's age, education, and work experience could perform the following sedentary-level jobs: sorter, preparer, and weight tester. The VE testified that those jobs existed in significant numbers in the national economy and estimated that there were 15,000 sorter positions, 30,000 preparer positions, and 15,000 weight tester positions across the country. R. 69. Plaintiff's counsel objected to the VE's testimony on the ground that the VE did not describe the methodology she used to arrive at the number of jobs available in the national economy. R. 71.

2

In a nineteen-page decision dated May 21, 2019, the ALJ concluded Plaintiff was not disabled. Following the Agency's sequential evaluation process, the ALJ found at step one that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022, and did not engage in substantial gainful activity since December 30, 2016, the alleged onset date. R. 18. At step two, the ALJ determined Plaintiff had the following severe impairments: inflammatory arthritis, arthropathies, and depression. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ then determined Plaintiff's residual functional capacity (RFC) which he set out in great detail:

> [T]he claimant has the residual functional capacity to lift and/or carry up to 10 pounds occasionally and lighter weights frequently, and has no limitations in her total ability to sit throughout an 8-hour workday. The claimant can stand and/or walk for ten continuous minutes and for a total of two out of eight hours. The claimant needs to alternate her position between sitting, standing, and walking, such that she stands and walks for 1-2 minutes after sitting for 45 minutes. While doing so, she would not need to be off task. She can occasionally operate foot controls. The claimant can occasionally climb ramps and stairs, and she can occasionally stoop, kneel, balance, crouch and crawl, but she can never climb ladders, ropes or scaffolds. She ought not perform rapid, repeated, trunk rotation, flexion, or extension. She can frequently use her hands to perform gross manipulation, but she cannot perform forceful grasping or torqueing or use vibrating hand tools with either hand. The claimant is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working a[t] unprotected heights or around exposed flames and unguarded large bodies of water and she should avoid concentrated exposure to unguarded hazardous machinery. She is incapable of precision depth or peripheral vision. The claimant is further limited to simple, routine tasks involving no more than occasional and minor changes in the work setting. She ought not perform work which requires multitasking. She could perform work requiring an average production pace, but is incapable of significantly above average or highly variable production pace work. . . . She is further precluded from work involving direct public service, in person or over the phone, although the claimant can tolerate brief and superficial interaction with the public, which is incidental to her primary job duties. She is unable to work in crowded, hectic environments. The claimant can tolerate brief and superficial interaction with supervisors and coworkers but is not to engage in tandem tasks.

3

R. 21. With these limitations, the ALJ found at step four that Plaintiff was unable to perform any past relevant work. R. 31. He nevertheless concluded at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. 32. Based on these findings, the ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from December 30, 2016, through the date of the decision. R. 33. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. Thereafter, Plaintiff commenced this action for judicial review.

## LEGAL STANDARD

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). This is a deferential standard of review. It is even more deferential than the standard reviewing courts apply to factual findings of trial courts. Traditionally, the standard of review that reviewing courts apply to lower court findings under Fed. R. Civ. P. 52(a) ("clearly erroneous") "has been considered somewhat stricter (i.e., allowing somewhat closer judicial review)" than the standard that reviewing courts apply to findings of administrative agencies. *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999).

Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). The ALJ is also expected to follow the Social Security Administration's (SSA) rulings and regulations in making a determination. Failure to do

4

so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Plaintiff's sole basis for remand is that the ALJ did not elicit a reasoned and principled explanation of the VE's job incidence numbers before relying on the VE's testimony to support the step five denial. She disputes whether substantial evidence supports the ALJ's finding regarding the number of sorter jobs, preparer jobs, and weight-tester jobs that exist in the national economy. At step five of the sequential evaluation process, the Commissioner had the burden of demonstrating the existence of significant number of jobs in the national economy that Plaintiff could perform. *See* 20 C.F.R. §§ 404.1560(c)(1); 416.960(c)(1). In *Chavez v. Berryhill*, the court held that in assessing the testimony of a VE concerning the number of jobs a claimant can perform, "the substantial evidence standard requires the ALJ to ensure that the approximation is the product of a reliable method." 895 F.3d 962, 968 (7th Cir. 2018) (citing *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002)). Plaintiff contends that the ALJ failed to do so in this case.

At the hearing before the ALJ, the VE was asked by the ALJ whether there were any jobs in the national economy that a person with Plaintiff's age, education, work experience, and RFC could perform. The VE responded that there were and listed three categories of jobs she believed Plaintiff could perform: sorter, of which there were 15,000 positions; preparer, of which there were

5

30,000 positions; and weight tester, of which there were 15,000 positions in the national economy. The VE testified that all three occupations had an SVP level of 2. She also testified that this was only a representative, not an exhaustive, list. R. 69–70.

Plaintiff's attorney later asked the VE how she came up with the 15,000 sorter positions. The VE responded: "Based upon the information that [I] receive from the U.S. Publishing and how many occupations are in that specific SOC Code. And also based upon the skill and exertional level and my experience placing individuals is how I came up with the 15,000, and the whole SOC Code has over 600,000 positions listed." R. 71. Counsel then followed up, asking "Okay. So again what's the methodology that you -- that got you from 600,000 down to 15,000?" *Id.* The VE responded:

> I just explained that the information that I got the numbers are from the exertional and skill level. And then based upon that, I indicate the 15,000. It's an estimate and the way that I perform it is usual and customary for my position, and I've only cited occupations that I've placed individuals at in multiple regions of the country.

*Id.*

At that point, counsel objected to the VE's testimony on the ground that "there's been no description of the methodology that's been used." *Id.* In response to the ALJ's questions, the VE testified that what she provided was only an estimate, but a conservative estimate. R. 72. Counsel again asked the VE to explain how she got from the 600,000 down to 15,000 jobs. The ALJ then explained to the VE that counsel wanted her "to show the math" and asked her to provide more information on how she arrived at the numbers she offered. *Id.* The VE responded:

> For the sorter position, the SOC Code is 51-9061. And in that particular SOC Code, there are 782 occupations ranging from different skill and exertional level. And the range of -- the starting number I should say for the whole SOC Code is 600,000 and it can be a -- it's actually a little bit more, but that's just a rounding down. And then based upon the number of sedentary unskilled positions and my experience placing individuals in that occupation is how I arrived at the 15,000, which is why I believe it's a conservative number.

6

R. 73.

In his written decision, the ALJ overruled Plaintiff's objection to the VE's job number estimates. R. 32. The ALJ explained that the VE has professional knowledge and experience in job placement and testified that she has professional experience placing individuals in the cited occupations. The ALJ summarized the VE's testimony explaining how she arrived at the job numbers. R. 32–33. The ALJ found that the methodology was sufficiently explained and that a sufficient number of jobs Plaintiff could perform were established. R. 33. He also noted that this is only an estimate of representative occupations and that the VE testified that it was a conservative estimate. The ALJ found the VE's job information to be reliable. *Id.* It is this finding that Plaintiff challenges.

The United States Supreme Court addressed this same issue almost two years ago in *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), a case which Plaintiff largely ignores. There, as in this case, the claimant challenged "the SSA's reliance on an expert's testimony about the availability of certain jobs in the economy." *Id.* at 1152. The specific question presented was whether the VE's refusal to provide the private market-survey data upon which she relied for her opinions in response to the claimant's request "categorically precludes her testimony from counting as 'substantial evidence.'" *Id.* The Court held that it did not. In so ruling, the Court first emphasized the deferential nature of judicial review of SSA factfinding by explaining what the "substantial evidence" standard means:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC v. Roswell*, 574 U.S. —, —, 135 S. Ct. 808, 815 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts,

7

> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; *see, e.g.*, *Perales*, 402 U.S. at 401 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229. *See Dickinson v. Zurko*, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Id.* at 1154.

The Court then turned to the claimant's argument in the case before it. The Court noted that Biestek was not arguing for "a free-standing procedural rule" under which a VE would have to produce her data in order for her opinion to be considered. *Id.* Although the Court noted that such a rule exists in federal litigation, *id.* (citing Fed. R. Civ. P. 26(a)(2)(B)), Biestek acknowledged that "no similar rule applies in SSA hearings." *Id.* This is because, the Court explained, "Congress intended those proceedings to be 'informal' and provided that the 'strict rules of evidence, applicable in the courtroom, are not to apply." *Id.* at 1154–55. Instead, Biestek urged the Court to adopt a substantive rule for assessing the quality and quantity of record evidence under which the testimony of a VE would be inadequate, when taken alone, to support an ALJ's finding if the VE refuses to produce her underlying data upon request. *Id.* at 1155. The Court declined to adopt such a rule, holding instead that "the inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." *Id.* at 1157. Such an inquiry, the Court explained, "takes into account all features of the vocational expert's testimony, as well as the rest of the administrative record. And in so doing, it defers to the presiding ALJ, who has seen the hearing up close." *Id.*

In this case, as in *Biestek*, the claimant is asking the Court to substitute its judgment as to the weight of the VE's testimony for that of the ALJ. In *Biestek*, the claimant asked the Court to hold as a matter of law that the VE's testimony was insufficient because the VE refused his request

to provide him the private market-survey data she relied on in forming her opinion. Here, Plaintiff contends that the VE's testimony cannot constitute substantial evidence because "the ALJ failed to obtain a reasoned and principled explanation for the VE as to her methodology in arriving at the job figures on which the ALJ relied to deny [her] claim." Pl.'s Br., Dkt. No. 16, at 2. In fact, however, the VE did explain the methodology she used to arrive at her opinion as to the number of jobs Plaintiff could perform.

Plaintiff apparently was seeking a mathematical formula the VE used to arrive at the number of jobs she thought she could perform. But the VE apparently had no mathematical formula. Instead, she explained that she relied upon data from customary sources, such as the Dictionary of Occupational Titles, U.S. Publishing, the U.S. Department of Labor, and Labor Market Information Bureau, and her 20 years of experience in placing people in the cited occupations. R. 70–71. Unlike the VE in *Biestek*, the VE in this case did not refuse to provide proprietary information or underlying data. Like many experts, she was offering an opinion based on authoritative sources used in her profession, supplemented by her years of experience of actually placing people in jobs. Instead of asking questions about her experience and how it aided her in arriving at her opinion, Plaintiff continued to insist that she provide a more detailed methodology, and when she failed to do so, objected to the admissibility of her testimony. As *Biestek* makes clear, however, whatever weakness the VE's testimony may have due to the failure to provide back-up information, generally goes to the weight the ALJ gives the testimony, not its admissibility:

> In some cases, the refusal to disclose data, considered along with other shortcomings, will prevent a court from finding that "a reasonable mind" could accept the expert's testimony. *Consolidated Edison*, 305 U.S. at 229. But in other cases, that refusal will have no such consequence. Even taking it into account, the expert's opinion will qualify as "more than a mere scintilla" of evidence supporting the ALJ's conclusion. Which is to say it will count, contra Biestek, as substantial.

9

139 S. Ct. at 1156.

As the Seventh Circuit has also recognized, a "precise count" of job numbers is not necessary. *Brace v. Saul*, 970 F.3d 818, 822 (7th Cir. 2020); *see Chavez*, 895 F.3d at 968 ("A VE's estimate will be just that—an estimate."). "[A]ny method that the agency uses to estimate job numbers must be supported with evidence sufficient to provide some modicum of confidence in its reliability." *Chavez*, 895 F.3d at 969. For instance, the VE could draw on her "knowledge of labor or market conditions and occupational trends, gleaned from reviewing data sources or placing workers in jobs." *Id.* at 970. The VE's explanation must be "sufficient to instill some confidence that the estimate was not 'conjured out of whole cloth.'" *Brace*, 970 F.3d at 822 (quoting *Donahue*, 279 F.3d at 446). Here, the VE drew on her 20 years of experience in placing people in jobs, as well as the statistical data from the customary sources used by experts in the field. And unlike the VE in *Brace*, she did not respond with testimony that "incants unelaborated words and phrases such as "weighting" and "allocation" and "my information that I have." *Id.*

Plaintiff also argues that the VE concealed the true nature of the sorter job as described in the DOT. She contends that the sorter job the VE identified with reference to the DOT entry of 521.687-086 is actually a "nut sorter job." Citing *Browning v. Colvin*, 766 F.3d 702 (7th Cir. 2014), Plaintiff asserts that, had the ALJ been made aware that the job at issue described a very obscure type of work in the nut industry, further inquiry would have been required. That case is distinguishable from the case at hand, however. There, the VE identified a significant number of "hand packer" jobs yet cited to the DOT Code for "hand bander (tobac-co), DOT 920.687-030." *Id.* at 708. The court noted that the VE did not indicate how many tobacco hand bander jobs exist and that the ALJ cited to that DOT Code section to conclude that the plaintiff had the RFC to be a hand packer. The court observed that there is no occupational title designated as "hand packer" in

10

the DOT and that the closest occupational title is "hand packager," DOT 920.587-018. The court concluded that, while there was no indication that the ALJ or VE was aware of the DOT's hand-packager description, it was apparent from the hand packager description that many of the jobs are beyond the plaintiff's capacity to perform. *Id.* In this case, the VE cited to the correct DOT Code for the sorter position and no one disputed that she could perform the sorter job as described in the DOT entry cited by the VE. The VE testified that she has experience placing people in the job and explained how she arrived at her estimate that there were 15,000 sorter jobs. Substantial evidence supports the ALJ's decision. The Commissioner's decision must therefore be affirmed.

## CONCLUSION

For these reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** at Green Bay, Wisconsin this 29th day of March, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge